## Hensley, et al. v. Morgan, et al.

(Decided February 10, 1922.)

### Appeal from Leslie Circuit Court.

1. Appeal and Error—Finding of Chancellor.—Evidence examined and the finding of fact by the chancellor on the issue whether a certain part of the lands of a decedent were in a parol partition set apart to one of his children is approved.

2. Dower—Bar of Interest in Lands—Execution Sale.—Although the widow of a decedent may be barred by a judgment from any interest in his lands, still if the part thereof which she subsequently conveys to another was not embraced in the part set apart to the son, the execution plaintiffs could have acquired no interest therein under their execution sale against the son.

3. Execution—Failure at Sale to Assert Homestead—Estoppel.—The mere passive presence of the defendant at an execution sale and his failure to then and there assert a homestead right in the lands advertised, will not operate as an estoppel thereafter against him to assert same; particularly where the sheriff does not comply with the statutory requirement in section 1703, Kentucky Statutes, to have set apart to the execution defendant the lands so occupied by him not to exceed one thousand dollars in value.

4. Homestead—Waiver of Exemption.—The provision of section 1706, Kentucky Statutes, that no mortgage, release or waiver of a homestead exemption shall be valid unless the same be in writing, subscribed by the defendant and his wife and acknowledged and recorded, applies to coercive sales of homestead rights.

CLEON K. CALVERT and MORRIS & JONES for appellants.

T. G. LEWIS and L. D. LEWIS for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

About the year 1879, James Morgan died intestate, a resident of that part of Clay county which a short time thereafter was taken into the new county of Leslie.

He owned at the time of his death about six hundred acres of land in one body on the waters of Middle Fork of Kentucky river, and a one-half undivided interest in another tract of land some distance away, but on the same waters, then lying in Perry county, but which was in that part of Perry county which subsequently went to make up the county of Leslie.

Some time after the death of James Morgan, the exact date not fixed, but much longer than fifteen years before the institution of this action in 1916, there was a parol partition of the landed estate of James Morgan between his children, and, as claimed by part of them, among his widow and five children.

This controversy deals only with that part of James Morgan's landed estate set apart in that parol partition to his son, Elijah Morgan, and that part, if any, set apart to his widow, Irena Morgan, it being the claim of the plaintiffs (appellants) that no part of James Morgan's landed estate was set aside to the widow in the parol partition, but that the part now claimed to have been set apart to her was embraced in and a part of the lands set apart to Elijah Morgan, one of the children; while it is the claim of the defendants (appellees) that a part of the land which plaintiffs are claiming under certain execution sales against Elijah Morgan was actually set apart in fee simple to the widow in lieu of her dower right in the whole and that she thereafter sold and conveyed the same. Subsequently the parol partition was carried into grant except that part allotted to Elijah Morgan.

There is no denial of the fact that there was a parol partition of James Morgan's lands or that the several partitioners took possession, moved upon and improved the several parts allotted to them, including Elijah Morgan. But there is a sharp issue of fact as to whether or not the widow was set apart anything in the parol partition, and as to whether that part of the land claimed to have been set apart to her was embraced in that part actually set apart to Elijah Morgan.

The separate answer of Elijah Morgan asserts his right of homestead in all of the lands so set apart to him by his father, he claiming that he was a *bona fide* housekeeper with a family and residing upon one of the tracts so set apart to him and using and farming the same in connection with the undivided interest allotted to him in the detached tract.

The separate answer of Susan Morgan Hoskins asserts title in herself through a conveyance from the widow, Irena Morgan, to that part of the tract of land alleged to have been set apart to the widow, but which the plaintiffs say was embraced in the part set apart to Elijah.

In 1902 Elijah Morgan conveyed to his then wife, Susan Morgan, and his infant son, Shelley Morgan, a part of one of the tracts lying on the Middle Fork set apart to him, and thereafter and before the levy of the executions under which the plaintiffs claim, Shelley Morgan died, an infant, never having been married. In 1913 two executions issued against Elijah Morgan and were levied upon his interest in the lands inherited from his father, and the sheriff thereafter made a deed to the purchaser who thereafter conveyed to the plaintiffs, under which deed the plaintiffs claim the whole of that tract of land set apart to Elijah Morgan on the river which was not embraced in the deed to his wife and son made in 1902, and a one-half undivided interest in the part so conveyed to his wife and son because Elijah Morgan, upon the death of his infant son, inherited from him the son's one-half interest therein; and they claim in addition the one-half undivided interest in the separate tract of land which belonged to James Morgan and which was set apart to Elijah Morgan in the parol partition.

After an elaborate preparation and the taking of a great deal of evidence the court entered a judgment finding as a fact that in the parol partition the tract of land claimed by the defendant, Susan Morgan Hoskins, to have been purchased by her from Irena Morgan, now Smith, the widow of James Morgan, was not embraced in nor allotted to Elijah Morgan in the parol partition, and that the land allotted to Elijah Morgan in such division, outside of the undivided one-half interest in the separate tract, was worth less than the sum of one thousand dollars at the time the executions were levied and sales made and that Elijah Morgan was at the time a *bona fide* house-

keeper with a family and residing thereon and that the same was exempt from levy and sale under the executions. He further found that the one-half undivided interest in the separate tract, being a distinct tract from that on which Elijah Morgan resided, was not exempt from levy and sale under the executions and adjudged the same to the plaintiffs by reason of the sale and conveyance. From this judgment the plaintiffs have appealed.

The weight of the evidence sustains the finding of the chancellor to the effect that that part of the land claimed by Susan Morgan Hoskins under conveyance from Irena Morgan, the widow, was not embraced in the part allotted to Elijah Morgan; but it is shown that in an action in the Leslie circuit court in 1903, to which Irena Morgan was a party, it was adjudged that she had abandoned her homestead in the land and she was divested of any interest whatever in the lands of James Morgan. This fact is unimportant for the purposes of this case, because although she had as the widow of James Morgan no interest in his lands, still if that part which she subsequently conveyed to Susan Morgan Hoskins was not embraced in the part set apart to Elijah Morgan, the plaintiffs could have acquired under their execution sales against Elijah Morgan's interest no title thereto.

In a reply to the separate answer of Elijah Morgan the plaintiffs, by way of estoppel against Elijah Morgan, allege that he was present at the execution sales and did not at that time claim the same as a homestead and permitted the plaintiff and those under whom they claim to purchase the land at the execution sales without informing them or any other person he claimed the land as a homestead, and alleging he should have then and there asserted his homestead claim as against the execution sales.

The evidence as to this is that Elijah Morgan was present at one of the sales at least and made no claim to the property and asserted no homestead interest therein and was wholly inactive; in fact, so far as the evidence shows, said nothing whatever.

Under section 1703, Kentucky Statutes, it is made the duty of the officer in whose hands a writ or judgment may be, before a sale under execution of land occupied as a homestead, to cause such part thereof as may be selected by the defendant, not to exceed in value one thousand dol-

lars, to be valued under oath and set apart to the execution defendant; and in the next section the valuation so made is required to be returned with the execution and the return on the execution must refer to and explain the proceedings.

This record fails to disclose that the sheriff had the homestead valued as required by this statute or that he returned such valuation with his execution.

The mere passive presence of the defendant in the execution at the sale and his mere failure to assert a homestead right in the lands advertised cannot operate as an estoppel against him thereafter to assert it; particularly where the officer does not comply with this statutory requirement. 21 C. J. 1150. If the sheriff had complied with the law in setting apart to the defendant his homestead, not to exceed one thousand dollars in value, no sale would have been had of that part of the land actually occupied by the defendant in the execution.

Not only so, section 1706, Kentucky Statutes, provides:

"No mortgage, release or waiver of such exemption shall be valid unless the same be in writing, subscribed by the defendant and his wife and acknowledged and recorded in the same manner as conveyances of real estate."

There is no claim here that the defendant or his wife ever executed such a writing and it may be questioned, although it is not decided, whether he might have been guilty of such active conduct as would have estopped him in the face of that statute, but surely his silence and inaction does not estop him.

It has been expressly held that section 1706 applies to coercive sales of homestead rights and was intended to save the homestead unless the right to it is waived in the manner pointed out by the statute. James v. Jones, 127 S. W. 795.

Concurring as we do with the finding of fact by the chancellor, and in his conclusion that Elijah Morgan was not estopped to thereafter assert his homestead by his conduct at the sales, we see no reason why the judgment should not be affirmed and it is so ordered.